UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| STANLEY L. NIBLACK, | Civil Action No. 16-747 (MCA) |
| Plaintiff, | |
| v. | OPINION |
| SCO ANNA MIGLIO, et al., | |
| Defendants. | |

I. **INTRODUCTION**

This matter has been opened to the Court by a "motion to partially dismiss [P]laintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6)."[1] The Moving Defendants contend that the § 1983 claims against Defendants Gary Lanigan, John Powell, and Kenya Collins are subject to dismissal because these Defendants were not personally involved in the alleged wrongs that form the basis of Plaintiff's § 1983 claims. For the reasons explained below, the Court will grant the motion to dismiss the claims brought pursuant to 42 U.S.C. § 1983 as to Defendants Lanigan, Powell, and Collins. The dismissal is without prejudice, and Plaintiff may file an Amended

---

[1] The Moving Defendants are identified as SCO Anna Miglio, DHO Christy Ralph, Sergeant James McDonnell, Lieutenant James Hunsicker, Sergeant Jonathon Hinson, Alexander Solanik, John Powell, Kenya Collins, and Gary Lanigan. However, they seek to dismiss the § 1983 claims against Lanigan, Powell, and Collins only.

1

Complaint within 30 days to the extent he can cure the deficiencies in his claims as to these Defendants.

## II. FACTUAL BACKGROUND

The Court recites only the facts necessary to the instant motion to dismiss. Plaintiff alleges in his Complaint that on April 3, 2014, Defendant SCO Anna Miglio, a corrections officer at Bayside State Prison (ECF No. 1, Compl. at ¶ 9), read Plaintiff's legal mail and/or documents during a search of his cell and subsequently instituted false disciplinary charges against him when he complained and sought to speak to a sergeant about her conduct. (*Id.* ¶¶ at 22-37.) The charges were for .256 "disobeying an order" and *.306 "conduct which disrupts the orderly running of the facility. (*See id.* at ¶ 64.) On April 4, 2014, Plaintiff was transferred from Bayside State Prison to Southern State Correctional facility pre-hearing detention. (*Id.* at ¶ 37.) Plaintiff further alleges that the Defendants who conducted his disciplinary hearing in April 2014 did not afford him due process in the proceeding and engaged in a variety of misconduct. (*Id.* at ¶¶ 38-63.) Plaintiff also alleges that he made unspecified complaints about his disciplinary hearing to "NJDOC administrative officials," but these complaints went unanswered. (*Id.* at ¶ 51.)

Plaintiff allegedly sought to take a polygraph test pursuant to N.J.A.C. 10A:3-7.1 in order to bolster his credibility in the disciplinary proceeding, but his request was refused by Administrator Willie Bonds, who did not provide a statement of reasons for the denial. (*Id.* at ¶ 59.) Plaintiff apparently appealed this determination to Defendant Alexander Solanik, an Assistant Superintendent at Bayside State Prison, but Defendant Solanik allegedly denied his appeal without applying the proper standard and without written explanation. (*Id.* at 60.)

2

Plaintiff then sought to pay for his own polygraph, and sent a request to Commissioner Lanigan and Administrator John Powell, but they did not respond. (*Id.* at 61.)

In the section of his Complaint entitled "Claims for Relief," Plaintiff alleges that "Defendant's [sic] Gary M. Lanigan and John Powell violated [P]laintiff's due process [rights] when they would not allow [P]laintiff's family to pay for [a] polygraph examination in bolstering his credibility against false disciplinary infractions lodged against him by SCO A. Miglio."[2] (*Id.* at ¶ 113.) He further alleges in the same paragraph that Defendants Powell, along with Defendant Charles Ray Hughes, "further violated [P]laintiff's due process [rights] in not answering [Plaintiff's] grievances when he sought to resolve this matter with complaints to them. (*Id.*)

Plaintiff was subsequently found guilty on both charges and received 60 days loss of commutation time, 10 days of detention time, and 90 days of administrative segregation on the .256 infraction, and received 90 days lost commutation time, 10 days detention, and 90 days administrative segregation on the *.306 infraction.[3] (*Id.* at ¶ 64.) Plaintiff appealed, and the case was remanded for a new hearing by the Appellate Division on April 20, 2015. (*Id.* at ¶¶ 66-67.) After the hearing, Plaintiff was found not guilty on the *.306 charge and guilty on the .256 charge. (*Id.* at ¶ 71.) Plaintiff appealed, and on June 18, 2015, Mrs. Nardelli, an Assistant Superintendent of Bayside State Prison, "rescinded the decision," finding that the evidence failed to demonstrate that a violation had occurred. (*Id.* at ¶ 73.)

---

[2] Plaintiff also alleges that Defendant Bond violated his due process rights by denying his request for a polygraph examination and failing to investigate the disciplinary infractions prior to issuing the denial. (*Id.* at ¶¶ 110-111.)

[3] Plaintiff alleges that Defendant DHO Christy Ralph did not provide a statement of reasons as to the evidence relied upon, the disciplinary action taken, or the basis for her findings. (*Id.* at ¶ 63.)

3

Plaintiff alleges that due to the false disciplinary charges he was denied parole and lost work and minimum credits that have not been restored despite his filing of grievances. (*Id.* at ¶¶ 68, 74-77.)

Plaintiff, who spent approximately six months in administrative segregation ("Ad-seg") on the disciplinary charges, also alleges that Defendants Ralph, Powell, Bonds, Hughes, Nelson, Collins, and Lanigan "held or had the [P]laintiff placed in in Ad-seg under horrendous conditions." (*Id.* at ¶ 116.) Plaintiff described these conditions in Ad-seg as follows:

> Where the conditions were horrendous, laundry not washed, rooms leaking water, Rooms flooding out with puddles in rooms, rusted beds, mold and mildew sheets to sleep on, no sick call program, medical slips went unanswered, placed in rooms with other prisoners who had serious psychological conditions, no reading materials, toilets backing up reeking of feces and urine (raw sewage), not given supplies or cleaning apparatus for the rooms, sheets not exchanged or washed.

(*Id.* at ¶ 116.) It appears from his Complaint that Plaintiff was confined at an Ad-seg unit at Northern State Prison. (*See id.* at ¶ 64.) Plaintiff further states in his Complaint that these conditions are not experienced by other prisoners in the general population, i.e., those who are not confined in Ad-seg. (*Id.* at ¶ 64.)

Plaintiff seeks damages against all Defendants in their individual capacities (*id.* at ¶ 126), as well as declaratory relief from the NJDOC.[4] (*Id.* at ¶ 125.) The Defendants seeking dismissal are supervisory officials who are sued in their individual capacities. Defendant Lanigan is identified in the Complaint as the Commissioner of the New Jersey Department of Corrections ("NJDOC") during the relevant time period. (ECF No. 1-1, Compl. at ¶ 21.) Defendant Powell is identified as an Administrator at Bayside State Prison during the relevant time period. (*Id.* at ¶

---

[4] The Court does not construe the Complaint to seek declaratory relief under § 1983 from Defendants Lanigan, Powell, or Collins, and therefore addresses only the individual capacity claims against these Defendants.

4

17.) Defendant Collins is identified as an Assistant Administrator/Superintendent at Northern State Prison during the relevant time period. (*Id.* at ¶ 19.)

### III. <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *United Van Lines, LLC v. Lohr Printing, Inc.*, No. CIV. 11–4761, 2012 WL 1072248, at *2 (D.N.J. Mar. 29, 2012). In considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires the plaintiff to show "more than a sheer possibility that a

defendant has acted unlawfully," but does not create what amounts to a "probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In ruling on a motion to dismiss, Courts are required to liberally construe pleadings drafted by *pro se* parties. *See Tucker v. Hewlett Packard, Inc.*, No. 14-4699 (RBK/KMW), 2015 WL 6560645, at *2 (D.N.J. Oct. 29, 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Such pleadings are "held to less strict standards than formal pleadings drafted by lawyers." *Id.* Nevertheless, pro se litigants must still allege facts, which if taken as true, will suggest the required elements of any claim that is asserted. *Id.* (citing *Mala v. Crown Bay Marina*, Inc., 704 F.3d 239, 245 (3d Cir. 2013)). To do so, [a plaintiff] must plead enough facts, accepted as true, to plausibly suggest entitlement to relief." *Gibney v. Fitzgibbon*, 547 F. App'x 111, 113 (3d Cir. 2013) (citing *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012)). Liberal construction also does not require the Court to credit a *pro se* plaintiff's "bald assertions" or "legal conclusions." *Id.* (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). That is, "[e]ven a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief. *Id.* (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

### IV. ANALYSIS

Here, the Moving Defendants have sought dismissal of certain claims against Defendants Lanigan, Powell, and Collins. From the outset, the Court notes that it is not clear which claims the Moving Defendants seek to dismiss. Plaintiff originally filed this action in <u>state court</u>, and not only alleges violations of 42 U.S.C. § 1983, but also violations of the New Jersey Constitution, the NJCRA, and the New Jersey Administrative Code. (*See* ECF No. 1-1, at ¶¶ 1-2.) Although Moving Defendants seeks dismissal of "all claims" against Lanigan, Powell, and

Collins, their arguments focus only on the § 1983 claims and do not address whether Plaintiff states claims for relief against these Defendants under the NJCRA or other state law.[5] Because Moving Defendants have the initial burden to show that no claim has been presented, the Court declines to address whether Plaintiff has sufficiently alleged any state law claims in the absence of appropriate briefing. The Court will therefore limit its analysis to whether Plaintiff has sufficiently alleged any federal claims under § 1983 against Defendants Lanigan, Powell, and Collins, and Moving Defendants are free to file a second motion to dismiss to address any remaining state law claims.

Defendants contend generally that Defendants Lanigan, Powell, and Collins are entitled to dismissal of the § 1983 claims against them because they are premised solely on a theory of *respondeat superior*, which is not a basis for liability under § 1983. (ECF No. 13, Moving Br. at 4-5.) Moving Defendants further contend in a summary fashion that although N.J.A.C. 10A:3-7.1 permits an inmate to request a polygraph examination, the administrative code does not confer a federal constitutional right to a polygraph examination. (*Id.* at 5.) Finally, Moving Defendants argue that Plaintiff's allegations that Lanigan, Powell, and Collins "'held or had him placed in [Administrative Segregation] under horrendous conditions'" is an "unsubstantiated allegation" amounting to a legal conclusion. (*Id.* at 6.)

The Court first addresses Plaintiff's claim that Defendants Lanigan and Powell ignored his letter request to have his family pay for a polygraph examination in connection with his disciplinary proceeding. Plaintiff allegedly requested to take a polygraph test, which is permitted

---

[5] For instance, Moving Defendants do not address whether New Jersey would recognize a limited due process right where the failure to provide a polygraph examination resulted in fundamental unfairness in the disciplinary hearing, or whether there is a private right of action for violations of the New Jersey administrative code.

7

under N.J.A.C. 10A:3-7.1, but was refused by Defendant Administrator Willie Bonds, who did not provide a statement of reasons for the denial. (*Id.* at ¶ 59.) Plaintiff apparently appealed this determination to Defendant Alexander Solanik, an Assistant Superintendent, but Defendant Solanik allegedly denied his appeal without applying the proper standard and without written explanation. (*Id.* at 60.) Plaintiff then sought to pay for his own polygraph, and allegedly sent a letter request to Commissioner Lanigan and Administrator John Powell, but they did not respond. (*Id.* at 61.) Plaintiff alleges in his Complaint that "Defendant's [sic] Gary M. Lanigan and John Powell violated [P]laintiff's due process [rights] when they would not allow [P]laintiff's family to pay for [a] polygraph examination in bolstering his credibility against false disciplinary infractions lodged against him by SCO A. Miglio."[6] (*Id.* at ¶ 113.) In the same paragraph, he alleges that Defendants Powell, along with Defendant Charles Ray Hughes, "further violated [P]laintiff's due process [rights] in not answering [Plaintiff's] grievances when he sought to resolve this matter with complaints to them. (*Id.*)

"In general, to prevail on [a procedural due process] claim, a plaintiff must show the deprivation of a protected liberty or property interest that occurred without due process of law." *Iwanicki v. Pa. Dep't of Corr.*, 582 F. App'x 75, 80 (3d Cir. 2014) (citing *Burns v. Pa. Dep't of Corr.*, 544 F.3d 279, 285 (3d Cir. 2008)). A prisoner possesses a liberty interest in protecting his good-time credits from arbitrary abrogation. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974); *Denny v. Schultz*, 708 F.3d 140, 143 (3d Cir. 2013) (A prisoner has a liberty interest in good time credits). In *Wolff v. McDonnell, supra*, the Court held that due process requires procedural protections before a prison inmate can be deprived of a protected liberty interest in good time

---

[6] Plaintiff also alleges that Defendant Bond violated his due process rights by denying his request for a polygraph examination and failing to investigate the disciplinary infractions prior to issuing the denial. (*Id.* at ¶¶ 110-111.)

credits; thus, "[w]here a prison disciplinary hearing may result in the loss of good time credits, ... an inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity ... to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563–67). In addition, the disciplinary decision must be supported by "some evidence" in the record. *See id.* at 455.

The Court agrees with Defendants to the extent that they contend that the Due Process Clause itself does not provide a federal right to take a lie detector test in a disciplinary hearing. *See, e.g., Williams v. Werlinger*, 451 Fed. Appx. 127 (3d Cir. 2011) (per curiam) (No due process violation in habeas context when federal prisoner was denied the opportunity to take a lie detector test for a disciplinary hearing; such a right is not protected under due process.); *Patterson v. Gilmore*, 974 F.2d 1340 (7th Cir. 1992) (inmate has no constitutional right to a polygraph test); *Wigal v. Wilson*, 865 F.2d 262 (6th Cir. 1988) (no right to polygraph or forensic tests; *see also Johnson v. New Jersey Dept. of Corrections*, 298 N.J. Super. 79, 688 A.2d 1123 (App. Div. 1997) (inmate found guilty of disciplinary infraction was not entitled to take polygraph test merely because he requested one).

The New Jersey Administrative Code provides that an inmate may request a polygraph in connection with a disciplinary proceeding:

> 10A:3–7.1 Use of polygraph examinations with inmates
>
> (a) A polygraph examination may be requested by the Administrator or designee:
>
> 1. When there are issues of credibility regarding serious incidents or allegations which may result in a disciplinary charge; or
>
> 2. As part of a reinvestigation of a disciplinary charge, when the Administrator or designee is presented with new evidence or finds serious issues of credibility.

> (b) The polygraph shall not be used in place of a thorough investigation, but shall be used to assist an investigation when appropriate.
>
> (c) Agreement by the inmate to take a polygraph examination shall not be a pre-condition for ordering a reinvestigation. An inmate's request for a polygraph examination shall not be sufficient cause for granting the request.

N.J. Admin. Code § 10A:3-7.1. In construing this regulation, the New Jersey Appellate Division has stated that "[t]he right to a polygraph is a limited right provided by N.J.A.C. 10A:3-7.1(a)." *Ramirez v. Dep't of Corr.*, 382 N.J. Super. 18, 23 (App. Div. 2005). As noted by the Moving Defendants, "[a]n inmate's request for a polygraph examination shall not be sufficient cause for granting the request." N.J.A.C. 10A:3–7.1(c); *Johnson,* 298 N.J. Super. at 83. N.J.A.C. 10A:3–7.1 "is designed to prevent the routine administration of polygraphs, and a polygraph is clearly not required on every occasion that an inmate denies a disciplinary charge against him." *Ramirez*, supra, 382 N.J. Super. at 23–24. A request should be granted only "when there is a serious question of credibility and the denial of the examination would compromise the fundamental fairness of the disciplinary process." *Id.* at 20.

Here, the Court need not (and does not) decide whether the denial of a polygraph examination in the context of a disciplinary proceeding could ever violate a New Jersey's prisoner's due process rights under federal or state law, and thus state a claim for relief under § 1983 or the NJCRA. Plaintiff's single allegation that Defendants Lanigan and Powell, who are remote supervisory officials not otherwise alleged to have been decision makers in his disciplinary proceedings, ignored Plaintiff letter request to have his family pay for a polygraph test, in effect "refusing" the request, is insufficient to suggest the type of personal involvement required to state a claim for relief under § 1983. As a general matter, claims that prison officials failed to take corrective action still require personal participation. "A defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d

10

1195, 1207 (3d Cir. 1988) (citations omitted). It is also well-established that prisoners do not have a constitutional right to an effective grievance process. "[B]ecause a prisoner has no free-standing constitutional right to an effective grievance process [citation omitted], a prisoner cannot maintain a constitutional claim . . . based upon [the prisoner's] perception that [the recipient of the grievances] ignored and/or failed to properly investigate his grievances." *Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011); *see also Mercado v. Ellis*, No. 11–6756, 2012 WL 1636164, at *3 (D.N.J. May 9, 2012) ("It appears that Plaintiffs only claims against the named defendants are based on their failure to investigate or respond to Plaintiffs letters and grievances. These claims fail to rise to the level of a constitutional deprivation sufficient to state a claim under § 1983. Indeed, an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim.") (internal quotation marks and citations omitted); *Drisco v. Williams*, No. CIV. 2:13-1144 KM, 2015 WL 5097790, at *10 (D.N.J. Aug. 27, 2015) (explaining same and collecting cases). Although Plaintiff cites *Cardona v. Warden-MDC Facility*, No. CIV. 12-7161 RBK AMD, 2013 WL 6446999, at *4 (D.N.J. Dec. 6, 2013), for the proposition that a supervisor may be liable under § 1983 where he or she has notice of and fails to remedy a continuing violation of a prisoner's constitutional rights, Plaintiff has not set forth facts suggesting that Defendants Lanigan or Powell were on notice of and failed to remedy any continuing violation of his constitutional rights. The Court will therefore dismiss without prejudice the § 1983 claims against Defendants Lanigan and Powell based on their failure to respond to Plaintiff's letter requesting to have his family pay for a polygraph examination.

The Court will also dismiss without prejudice Plaintiff's § 1983 claims against Defendants Lanigan, Powell, and Collins premised on their alleged placement of Plaintiff in

administrative segregation under "horrendous conditions." Plaintiff, who spent approximately six months in administrative segregation ("Ad-seg") on the allegedly false charges, alleges that Defendants Lanigan, Powell, and Collins, along with Defendants Ralph, Bonds, Hughes, and Nelson, "held or had the [P]laintiff placed in in Ad-seg under horrendous conditions." (*Id.* at ¶ 116.) Plaintiff appears to allege that he was held in an Ad-seg unit at Northern State Prison (*id.* at ¶ 64), and described the Ad-seg conditions as follows:

> Where the conditions were horrendous, laundry not washed, rooms leaking water, Rooms flooding out with puddles in rooms, rusted beds, mold and mildew sheets to sleep on, no sick call program, medical slips went unanswered, placed in rooms with other prisoners who had serious psychological conditions, no reading materials, toilets backing up reeking of feces and urine (raw sewage), not given supplies or cleaning apparatus for the rooms, sheets not exchanged or washed.

(*Id.* at ¶ 116.) Plaintiff further states in his Complaint that these conditions are not experienced by other prisoners in the general population, i.e., those who are not confined in Ad-seg. (*Id.* at ¶ 64.)

Plaintiff appears to frame his placement in Ad-seg as a due process violation. In this regard, the Court notes that prisoners typically have a protected liberty interest only in "freedom from restraint" that "imposes atypical and significant hardship … in relation to the ordinary incidents of prison life." *See Sandin v. Conner,* 515 U.S. 472, 484 (1995). As such, placement in "administrative segregation only implicates a protectable liberty interest [sufficient to trigger due process protections] if it dramatically departs, in length of time or otherwise, from basic prison conditions." *Crawford v. Lappin,* 446 F. App'x 413, 415 (3d Cir. 2011) (citing *Mitchell v. Horn,* 318 F.3d 523, 532 (3d Cir.2003)); *Allah v. Seiverling,* 229 F.3d 220, 224 (3d Cir. 2000) ("[P]lacement in administrative confinement will generally not create a liberty interest.")). "In determining whether a protected liberty interest exists, the court must consider: (1) the duration

of the disciplinary confinement; and (2) whether the conditions of confinement were significantly more restrictive than those imposed upon other inmates in solitary confinement." *Huertas v. Sec'y Pa. Dep't of Corr.*, 533 F. App'x 64, 66 (3d Cir.2013) (citing *Sandin*, 515 U.S. at 486).

Most cases considered by the Third Circuit deal with the length of time spent in segregation. The Third Circuit has held that administrative segregation in the S.C.I. Graterford Restricted Housing Unit for periods as long as fifteen months does not create an atypical and significant hardship and, thus, does not deprive an inmate of a liberty interest. *See Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir.1997); *see also Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir.2002) (seven months in disciplinary confinement did not implicate a liberty interest); *Torres v. Fauver,* 292 F.3d 141, 151–52 (3d Cir.2002) (disciplinary detention for fifteen days and administrative segregation for 120 days did not implicate a protected liberty interest); *Jenkins v. Hayman*, No. CIVA 09-4989 (FLW), 2010 WL 1838399, at *10 (D.N.J. May 6, 2010) (same); *cf. Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir.2000) (holding that eight years in administrative custody is atypical and implicates a protected liberty interest); *Allah v. Bartkowski*, 574 F. App'x 135, 139 (3d Cir. 2014) (vacating dismissal of due process claim where inmate held in administrative segregation for six years).

Even assuming that Plaintiff could state a due process violation based on his placement in Ad-seg, the Court agrees with Defendants that Plaintiff has not sufficiently alleged that Defendants Lanigan, Powell or Collins were personally involved in this alleged wrong.

It appears, however, that Plaintiff also attempts to allege that the conditions of his confinement in Ad-seg violated the Eighth Amendment. The Eighth Amendment imposes upon prison officials a duty to provide "'humane conditions of confinement.'" *Betts v. New Castle*

*Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "For the conditions of confinement to rise to the level of an Eighth Amendment violation, they must deny the '"minimal civilized measure of life's necessities."' " *Id.* (quoting *Farmer*, 511 U.S. at 835). Unsanitary conditions can be cruel and unusual. *Young v. Quinlan*, 960 F.2d 351, 364 (3d Cir.1992), *superseded by statute*, Prison Litigation Reform Act of 1996, Pub.L. No. 104–134, 110 Stat. 1321, as recognized in *Nyhuis v. Reno*, 204 F.3d 65, 71 n. 7 (3d Cir. 2000). To establish deliberate indifference a prison official must both know of and disregard an excessive risk to an inmate's health or safety. Thus, "[t]o assert an Eighth Amendment conditions of confinement claim, a prisoner must satisfy both an objective ('Was the deprivation sufficiently serious?') and subjective ('Did the officials act with a sufficiently culpable state of mind?') test." *Allah*, 574 F. App'x at 138 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

Here, Plaintiff sufficiently alleges the conditions of his confinement in Ad-seg violated the Eighth Amendment; however, he does not provide sufficient facts in his Complaint to suggest that Defendants Lanigan, Powell, or Collins were on notice of any of the Ad-seg conditions he describes in his Complaint, and failed to remedy the situation. Plaintiff may be able to cure this defect in his Complaint, particularly with respect to Defendant Collins, who is alleged to be an Assistant Administrator/Superintendent at Northern State Prison. For these reasons, the Court will dismiss without prejudice Plaintiff's Eighth and/or Fourteenth Amendment § 1983 claims against Defendants Lanigan, Powell, and Collins premised on their alleged placement of Plaintiff in Ad-seg under horrendous conditions, and will grant him leave to re-plead the knowledge element of this claim with respect to these three Defendants.

V. **CONCLUSION**

14

For the reasons explained in this Opinion, the Court will grant the motion to dismiss the § 1983 claims against Defendants Lanigan, Powell, and Collins. The dismissal is without prejudice, and Plaintiff is granted leave to amend his Complaint within 30 days to the extent he can cure the deficiencies in the § 1983 claims against these Defendants. An appropriate Order follows.

_____
Madeline Cox Arleo, U.S.D.J.

Dated: February 28, 2017